# UNITED STATES DISTRICT COURT

## DISTRICT OF MAINE

UNITED STATES OF AMERICA              )
                                      )
                                      )
v.                                    )      Mag. No. 03- 04 - 14 - B
                                      )                37-
HANSANA VONGKAYSONE                   )          DEPUTY CLERK
PHONTHEP VONGKAYSONE                  )

### CRIMINAL COMPLAINT

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief.

Beginning in about November 2003 and continuing until on about January 12, 2004, in the Districts of Maine and Massachusetts, the defendants,

### HANSANA VONGKAYSONE
### PHONTHEP VONGKAYSONE

knowingly and intentionally conspired with each other and others to commit offenses against the United States, that is, to distribute and possess with intent to distribute 500 grams or more of a substance containing cocaine and 50 grams or more of a substance containing cocaine base, Schedule II controlled substances, as listed in Title 21, United States Code, Section 812, in violation of Title 21, United States Code, Sections 846 and 841(a)(1). It is further alleged that the penalty provisions of Title 21, United States Code, Section 841(b)(1)(A) apply to the conduct described herein.

I further state that I am a Special Agent with the United States Drug Enforcement Administration and that this Complaint is based on those facts which are set forth in my affidavit which is attached hereto and which is incorporated herein by reference.

Date:

S/A Paul Buchanan
U.S. Drug Enforcement Administration

Sworn to before me and subscribed in my presence this 26th day of January, 2004.

A TRUE COPY
ATTEST: William S. Brownell, Clerk

By _____        _____
        Deputy Clerk                   United States Magistrate Judge

## AFFIDAVIT OF PAUL BUCHANAN

I, Paul Buchanan, do hereby depose and state:

I am a Special Agent with the United States Drug Enforcement Administration (DEA).  I make this Affidavit in support of the issuance of a criminal complaint charging Hansana Vongkaysone and Phonthep Vongkaysone with one count of conspiracy to distribute and possess with intent to distribute 500 grams or more of a substance containing cocaine and 50 grams or more of a substance containing cocaine base in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(A). The information contained in this affidavit is known to me from personal knowledge, discussions with other investigating agents and cooperating individuals identified below. This affidavit does not contain all the facts known to me at this time, but merely seeks to establish that probable cause exists that Hansana Vongkaysone and Phonthep Vongkaysone have committed the above-mentioned offense. In support thereof, I state the following:

1. On January 11, 2004, Dung Le and Hoang Nguyen of Portland, Maine were stopped on the Maine Turnpike by Maine State Troopers.  The Troopers found two ounces of cocaine base in the back seat of the car that Le and Nguyen were traveling in.  Le and Nguyen have been charged by complaint in the United States District Court for the District of Maine with conspiracy to distribute and possess with intent to distribute 50 grams or more of a substance containing cocaine base.

2. Following their arrest, both Le and Nguyen agreed to speak to me.  They both explained that for the last three to four months they, or one of their associates, have made at least three trips a month to Lowell and purchased approximately 2 ounces of cocaine base from an individual in Lowell.  Nguyen agreed to make a call to his source and order cocaine base.

3. On January 12, 2004, prior to 2:00 p.m., Nguyen made a recorded call to his source. Nguyen told his source that he wanted "two." Nguyen told us that that meant two ounces of cocaine base. Nguyen and Nguyen's source agreed to meet in Lowell.

4. On January 12, 2004, I drove from Portland, Maine to Lowell, Massachusetts with Nguyen and several other agents. At approximately 7:30 p.m., we arrived in Lowell. Nguyen made a recorded call to his source. Nguyen's source told Nguyen to meet him in front of the Blockbuster Video store in the Hannaford Brothers' parking lot in Lowell. Agents apprehended Nguyen's source in the Hannaford Brothers' parking lot. Agents found approximately two ounces of what appeared to be cocaine base in Nguyen's source's sweatshirt.

5. S/A Dan Rousseau conducted a chemical field test of a sample of the substance seized from Nguyen's source and it tested positive for cocaine base.

6. Nguyen's source was charged in United States District Court for the District of Maine with conspiracy to distribute and possess with intent to distribute 50 grams or more of a substance containing cocaine base.

7. On January 16, 2004, Nguyen's source agreed to speak to me and other federal agents in the presence of his lawyer and pursuant to a proffer letter. Hereinafter, Nguyen's source will be referred to as the "cooperating witness" or "CW." The CW admitted to me that s/he had been supplying several individuals from Maine with cocaine base (otherwise referred to as "crack" or "crack cocaine"), including Le and Nguyen. S/he said that they had been purchasing approximately 2 ounces of crack from him, three to four times a week, for at least three to four months. The CW explained that s/he has been buying approximately 1/2 kilogram of powder cocaine from a single source and that s/he would convert the powder cocaine to cocaine base, which s/he then sold to the individuals from Maine. The CW identified his source as an Asian

2

male in his 30s from Rhode Island, whom the CW only knew as "Na." The CW said that s/he had made the cocaine base that s/he had in his or her possession when s/he was arrested with powder cocaine that s/he had purchased from Na a few days before his or her arrest.

8. Based on my experience I know that cocaine base is made by a process involving the cooking of powder cocaine with a mixture of water and baking soda.

9. The CW further explained that when s/he wanted cocaine, s/he would typically call Na on Na's cell phone and order the cocaine. They would usually meet the next day at a Cambodian Restaurant on Chelmsford St. in Lowell, Massachusetts. Na would arrive in a vehicle with Rhode Island license plates. The CW said that s/he usually paid Na $800 per ounce for the cocaine.

10. On Sunday, January 18, 2004, the CW made a recorded telephone call to Na at the number the CW had identified as Na's cell phone number. I recorded and monitored the call. The CW identified the voice on the other end as his cocaine source and the person s/he knew as Na. The CW told Na that s/he needed to see him the following Wednesday, January 21st.

11. On Wednesday, January 21st, the CW made another recorded telephone call to Na. I recorded and monitored the call. During that conversation, the CW told Na that s/he needed "a half", which the CW told me meant 1/2 kilogram of cocaine. They agreed to meet the next day, Thursday, January 22nd. The CW made a second recorded telephone call to Na a few minutes later. I recorded and monitored the call. During that call Na and the CW agreed to meet at the Cambodian restaurant on Chelmsford St. in Lowell at 6:00 p.m. on January 22nd. On January 22nd, the CW made another recorded telephone call to Na. I monitored the call. Na indicated that it was too late for to do the deal in Lowell. Na told the CW to call him at 4:40 p.m. on Friday.

3

12. At approximately 4:45 p.m., on January 23, 2004, the CW made a recorded telephone call to Na. I recorded and monitored the call. During that call Na agreed to meet the CW with 1/2 kilogram of cocaine at 6:45 pm at the Cambodian restaurant.

13. HIDTA agents Greg Boucher and Steven Thibodeau and several other agents established surveillance at Thanh Thanh, the Cambodian restaurant described by the CW, at approximately 6:30. Task Force Agents Boucher and Thibodeau have explained the following:

A. that at approximately 6:45 p.m., a grey Acura with Rhode Island license plates entered the parking lot at Thanh Thanh. There were two Asian males in the vehicle. The Asian males stayed in the vehicle for approximately 10 minutes when a red Honda Accord pulled in and one of the occupants approached the passenger side of the Acura.

B. The Asian male in the passenger side of the Acura and the occupant of the Honda appeared to exchange something and the occupant returned to the Honda. The Honda left the parking lot.

C. The Acura then backed into a parking spot so that the occupants could see the parking lot. A few minutes later the Acura was moved to yet another spot in the lot, positioned so as to have a view of the inside of the restaurant. The driver of the Acura got out of the car and appeared to look around the parking lot and then looked into the restaurant as if he was looking for someone. The driver returned to the Acura.

D. Agents approached the Acura and removed the two Asian males. The passenger was identified as Hansana Vongkaysone otherwise known as "Na" and the driver as Phonthep Vongkaysone. Agents found approximately 1/2 kilogram of cocaine in a shopping bag in a plastic bag on the floor of the passenger side of the Acura.

4

E. Hansana Vongkaysone and Phonthep Vongkaysone were transported to Lowell PD and advised of their Miranda rights. Both defendants waived their rights and agreed to speak to the agents.

14. I interviewed Hansana Vongkaysone. He admitted that he had been delivering cocaine to the CW for approximately 6 months and that the 1/2 kilogram found in the car was for the CW. Hansana Vongkaysone also explained that Phonthep Vongkaysone is his cousin and that he helps him with his drug deals and that he has paid Phonthep in the past for his assistance. Hansana also told me that when he had sold the occupant of the red Honda 2 ounces of cocaine in the restaurant parking lot that night.

15. DEA Special Agent Paul Buchanan interviewed Phonthep Vongkaysone who also admitted that he helps his cousin Hansana deliver cocaine and that he was helping him on January 23rd when they were arrested.

16. On January 23rd, both Hansana Vongkaysone and Phonthep Vongkaysone signed written waivers of their right to a probable cause finding within 48 hours and to speedy appearance before a federal magistrate judge, and agreed to cooperate with federal agents.

17. I field tested the substance seized from the Acura and it tested positive for cocaine.

18. Based on the above information, I believe that probable cause exists to find that Hansana Vongkaysone and Phonthep Vongkaysone have committed the offense of conspiracy to distribute and possess with intent to distribute 5 kilograms or more of a substance containing cocaine and 50 grams or more of a substance containing cocaine base and in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1(A).

Dated at Portland, Maine this 26th day of January, 2004.

5

S/A Paul Buchanan
DEA

Subscribed to and sworn before me this 26th day of January, 2004.

United States Magistrate Judge

6

WAIVER OF RIGHT TO A PROBABLE CAUSE FINDING AND TO
SPEEDY APPEARANCE BEFORE A FEDERAL MAGISTRATE JUDGE
PURSUANT TO FED.R.CRIM.P. 5

1. I, Phonthep Vongkeysone understand that I have been arrested without a warrant
and that I have the following rights:

     a. a right to have probable cause for my arrest determined within 48 hours of my arrest
by a judicial officer;

     b. a right to have a complaint filed setting forth the charges against me and the probable
cause supporting my arrest; and

     c. A right to be brought before a federal magistrate judge without unnecessary delay for
an initial appearance.

2. I understand that at my initial appearance before the magistrate-judge the following would
occur:

     a. I would be informed of the charges against me.

     b. I would have a right to be represented by an attorney, and to have the court appoint an
attorney to represent me if I was unable to obtain an attorney.

     c. I would be allowed reasonable time and opportunity to consult with my attorney.

     d. I would not be required to make any statements, and any statements I did make might
be used against me.

     e. I would be informed of the general circumstances under which I could be released
before trial, and the magistrate-judge would either set bail or order me detained.

     f. Unless I waived my right to a preliminary hearing, the magistrate-judge would set a
date for a preliminary hearing to determine whether there was probable cause to believe that I
committed an offense.

3. Knowing and understanding all of this, and knowing that I will be charged and prosecuted at a
later date, I waive and give up my right to have probable cause determined by a judicial officer
within 48 hours of my arrest, to have a complaint filed and to be brought before a magistrate
without unreasonable delay.

Dated: 1/23/2004

Witnessed: _____ SA

## WAIVER OF RIGHT TO A PROBABLE CAUSE FINDING AND TO SPEEDY APPEARANCE BEFORE A FEDERAL MAGISTRATE JUDGE PURSUANT TO FED.R.CRIM.P. 5

1. I, _Hansan A. VonCkalsone_ understand that I have been arrested without a warrant and that I have the following rights:

    a. a right to have probable cause for my arrest determined within 48 hours of my arrest by a judicial officer;

    b. a right to have a complaint filed setting forth the charges against me and the probable cause supporting my arrest; and

    c. A right to be brought before a federal magistrate judge without unnecessary delay for an initial appearance.

2. I understand that at my initial appearance before the magistrate-judge the following would occur:

    a. I would be informed of the charges against me.

    b. I would have a right to be represented by an attorney, and to have the court appoint an attorney to represent me if I was unable to obtain an attorney.

    c. I would be allowed reasonable time and opportunity to consult with my attorney.

    d. I would not be required to make any statements, and any statements I did make might be used against me.

    e. I would be informed of the general circumstances under which I could be released before trial, and the magistrate-judge would either set bail or order me detained.

    f. Unless I waived my right to a preliminary hearing, the magistrate-judge would set a date for a preliminary hearing to determine whether there was probable cause to believe that I committed an offense.

3. Knowing and understanding all of this, and knowing that I will be charged and prosecuted at a later date, I waive and give up my right to have probable cause determined by a judicial officer within 48 hours of my arrest, to have a complaint filed and to be brought before a magistrate without unreasonable delay.

Dated: _1/23/2004_

Witnessed: _____ SA

_____ TFA  1-23-04